Case No. 19-5142, Donald J. Trump et al., a balance, v. Mazars USA, LLP and Committee on Oversight and Reform of the U.S. House of Representatives. Mr. Norris for the balance, Mr. Letter for the appellee. Mr. Norris is now unmuted. Good morning. Good morning, Your Honors. May it please the Court. In April of 2019, when the Oversight Committee issued this subpoena to Mazars, it had an extraordinarily broad view of its own investigative authority. According to the committee, its power to subpoena the president's personal papers was coextensive with its power to legislate. It did not have to give any reasons or explanation as to what legislative goals it was pursuing, and it had no duty to meaningfully narrow or tailor its requests. That view of its own authority is reflected in its subpoena, which is drafted in incredibly broad terms, and it's substantiated with little more than a sentence, a vague sentence in a memo about legislation. But the committee's view of its own authority was rejected by the Supreme Court in this case, nine to nothing. The Court announced a new test that substantially restricts Congress's power to subpoena the president's personal papers, and in response to that decision, the committee did not withdraw, narrow, or even reissue its subpoena. It instead attaches a 25,000-word memo to the back of its supplemental appellate brief and attempts to argue that this subpoena satisfies a standard that the committee never envisioned would apply to it. That strategy is unpersuasive, it's impermissible under the governing law, and it violates the appellate rules of civil procedure, the federal rules of appellate procedure. This Court should reject it. Mr. Norris, the committee says in its supplementary brief that we can still rely only on the Cummings record to sustain the subpoena, and if that's the case, if this Court limited its view to the Cummings memo alone, we still have our argument that the district court is better positioned to apply the Supreme Court's test in the first instance, but it does... And why is that since basically the four factors identify legal questions that we can ask and apply to the record? I understand your argument that you don't believe we could sustain the subpoena on the existing Cummings record, but setting that aside, if we thought we could, why would we need to remand the case? What additional fact-finding would there be? It's just the Court identified four questions, all identified to quote the Court, and we can apply those. In fact, I think in the brief, you say those are mainly legal, those are legal questions. Two responses, Judge Stadel. First, even on pure questions of law, this Court is a court of review, not a first view, and it benefits from a district court's application of a legal standard in sharpening the issues for appellate review, but more importantly and secondly, we do not believe that all four factors are purely legal questions. I'll give you a few examples. The first is whether a subpoena to the President is reasonably necessary to accomplish the legislature's goals. That question involves questions such as what efforts has the committee made so far to obtain this information? Who else could it ask? Would those avenues be fruitful? Those are all questions of fact. In the Maloney memo, in particular, the Cummings memo says nothing about those questions. The Maloney memo says quite a bit, and quite a bit that's contested from us. We think that there's genuine... But let me ask about that. I hear what you're saying about that, but the committee has said they have the burden of proof here. They have the burden to show that what they're seeking is reasonably necessary. They told us that that this record is sufficient. We can look at the record. If we don't agree with them, we would not enforce a subpoena. That would be the end of it. They would have failed to demonstrate that if the information they're seeking is reasonably necessary. I mean, I'll ask Mr. Wetter the same question, but he does say he believes he can sustain this on the existing record, and if we don't agree, I don't see why we need to have more fact-finding. The burden is on him. The burden is on the committee. Understood, Your Honor. I don't disagree with most of that. I do believe there are some contested facts here. Right. I'm sorry, can you repeat that? No, I just said I didn't think you would disagree with it, because, yeah. So, so then you agree that we could, we could, we could confine, if we could... In fact, there's nothing in the Supreme Court decision, is there, that suggests that we need a different record to decide this case. They just, the court just identified four factors, told us to apply them. It was the dissent that suggested it couldn't survive on this record, but the court didn't say that. Right. There is nothing explicit in the Supreme Court's decision about the record. I do think... I was going to say, I do think there are some implicit signals from the Supreme Court. The Supreme Court said that the committee has to identify its legislative purposes with specificity, and identify a particular legislative goal, and it said that vague and loosely worded explanations are insufficient. I do think that is quite a good description of the Cummings memo, which in the most conclusory sentence says that the committee is considering laws and other legislative proposals within our jurisdiction, after listing several plainly not legislative goals before that. It's, it's quite vague and quite insufficient under the Supreme Court's test, and that is my, my main answer to this court's limiting itself to the Cummings memo, which we think is required under the federal rules of appellate procedure. The main response we have to that is that the committee cannot possibly win on the existing record. The committee does not provide specific legislative goals. It does not provide the specificity that the Supreme Court said was required. There's no explanation in the current record as to, as to what other efforts the committee has made to obtain this information, and Judge Tatel, you're correct, they do have the burden of proof on that question, and I would say they have plainly not satisfied it. There has never been a subpoena, let alone a document request, for these particular documents that was ever sent to us, to the Trump organization. Never even been an attempt. The, the first request for these particular documents was, was sent around the Trump organization to a neutral third-party custodian. No attempts to subpoena us, and if they had attempted to subpoena us, I would direct the court to page 105 of the joint appendix. The committee has a process whereby, if it subpoenas you directly, it has a process whereby it has no obligation to, to engage in accommodation efforts with you. Now, that requirement, that accommodation process does not apply when the committee uses what it calls a friendly subpoena, which is a subpoena to a neutral third-party custodian like Mazars. When it uses that process, it has no accommodation requirements, and so the committee has made some, some unrelated requests to, or loosely related requests to the Trump organization and to other executive agencies, but if you look at those requests, which are directly to the, the holder and the real party and interest of the information, those requests each time are much, much narrower than the request made to Mazars, and so I think that demonstrates that when the committee is forced or knows it has to go through the accommodation process, it self-narrows its requests and intends to focus on exactly the information it needs, instead of asking for everything under the sky like it does when it goes after neutral third parties. Can I ask, um, Mr. Norris, you, you, I think you were starting to talk about aspects that you thought of the Maloney memorandum that were not purely legal, that had facts, or I, I think you meant that you would factually dispute, and you talked about the reasonably necessary standard. Was that it, or were there others? I just want to make sure I got your points on, on what you would consider to be factually, not legally, in dispute with respect to the Maloney memorandum. In judgment, I take your question to be what would be in dispute for purposes of summary judgment, which is, okay, so the reasonably necessary prong has sort of several sub facts that we would dispute. We dispute their characterization of how we dispute that they could not get productive information from us, from a direct request from, to the Trump Organization or to White House counsel. There are parts of the Maloney memo that say... What do you, what do you mean by that? You mean that, had they, is it your position that had they made this request directly of the Trump Organization, documentation would have been forthcoming from attorneys from the organization and from agencies under the control of the White House counsel and others, under the control of the president? I just want to make sure I understand, is it your representation that documentation would have been forthcoming, because you know what the request is, or simply that they should have asked you first, you would have said no, and we would have been right back to square one. It's more of a mixed question, I would say, facts and law and what I'm... I'm not asking for that label, I'm asking for your factual response to this position. Right, so there's been... What do you mean by that statement, they should have asked us first? Well... Is that a procedural step or are you saying factually that something would have changed had they asked you first? Correct, so we have broad legal purpose-based challenges to the subpoena that we would make. Of course, of course. We still think this request would be illegal as directed to us. I'm not asking that question. Right, but if all those legality questions are set aside, we've been perfectly willing to negotiate in many of these cases and would do so here as well. Okay, but your first response is you would have not responded because of your legal objections. We would have raised our same legal objections, but preserving those legal objections, there still could have been room for negotiation and compromise. I'm asking could first, or could, I'm asking would. Your Honor, it's hard to know. There's been no requests directed to us. I don't think that's hard to know. It's easy enough to talk to your clients and know, you know, is it a concern here really that we were willing to work with you further than what the executive branch and its agencies and the attorneys for the organization have done in the past, but it would have been a more fruitful course, or is this more just a procedural objection? Our willingness to negotiate is genuine. I can't predict the way those negotiations would go, but we have a very good working relationship with Mr. Letter. A lot of respect for him and have been able to come to compromises throughout this litigation. I can't, I don't have any authority. Compromises on any document disclosures? Just, you mean on the procedures for adjudicating this case? Correct. There have been no voluntary disclosures so far, but there haven't been much opportunity to do so. We have every opportunity. You could have volunteered and say, look, attorneys do this all the time. You don't need a court to say, you guys go talk. You could have initiated this process on your own if you thought it would be fruitful and said, look, let's call up Mr. Letter or let's talk. We're happy to, let's see if we can work something out here. But that hasn't been done? Your Honor, there have been discussions. They, I'll admit they've been limited from my understanding, and the parties have fairly divergent views as this case has gone on to this point about what the law requires and who was likely to succeed on their various arguments. But respectfully, you know, we prevailed in the Supreme Court. I do kind of think the ball is in the House's court in terms of helping narrow and confine the types of documents they're most interested in. And in fact, in the parallel Second Circuit litigation, there were three subpoenas involved. The House withdrew one of them after the Supreme Court's decision, and it narrowed the remaining two. And there's been no I was just gonna, because I distracted your, I really wanted to get your list of sort of things that you think are factual disputes, but I want to make sure Judge Rau gets to ask her question too. I have the reasonable, necessary, under that umbrella dispute in the accommodation history. Is there more under that one, or are there other prongs that you think are? I'm not sure, I meant to say, I'm not sure I got it out, that there are representations about what was produced by various executive agencies. One of those representations is that the committee reviewed several documents in camera and decided they were insufficient to satisfy its goals. No evidence of what those documents actually said. And then there's I'm sorry, what was that last thing you said with that one? There's no explanation of what those documents are, or what they said, or why they were insufficient. And so that's all In camera, are they allowed to describe the contents of in-camera disclosures on the public record? Perhaps not, Your Honor, but Judge Chabel is correct, they have the burden of proof here. I'm just trying to get your objections, that one seems a little hard to do. Sure, but that is part of the burden, by unilaterally declaring that accommodation efforts were unsuccessful. Okay. Those are the two main practices you were taking on, Your Honor. The other umbrella... I'm sorry, just with the Maloney memo, that's all I'm talking about. I think there's another umbrella of factual risk. The Supreme Court said that the committee needs to identify its legislative goals with evidence. It needs to provide evidence of what it's doing. And we thoroughly dispute, as this Court knows, that the committee is genuinely pursuing this legislation, that the subpoena is an attempt... Sorry, I believe I'm maybe over my time. That's okay. We have some more questions anyway. Yeah, go ahead. We have a dispute about whether the legislation identified in the Maloney memo is truly what is being pursued by the committee, whether these requests are reasonably necessary or even reasonably relevant to that legislation. And part of that is that the subpoena is an attempt to mislead the committee into thinking about it that way. There have been a lot of shifts in the explanations given for the subpoena. We started in the district court with discussing the informing function, that the committee wanted this information so that it could provide it to the public and inform it about the president's finances. We moved then to a hearing about Michael Cohen and his particular allegations of supposed criminal misconduct in 2011 through 2013. There's a March 20 letter from Chairman Cummings that explains that that's what the committee is looking into. Then we have, as this Court knows, sort of in the en banc proceedings, there's a discussion of impeachment and that the subpoena is somehow an attempt to support an impeachment hearing or impeachment proceeding. And then now we have the Maloney memo that really takes Michael Cohen and puts him in the background. His allegations are no longer the subject of the investigation, but instead there are these three particular legislative goals that we believe were separate investigations from this one that are now being used to justify this investigation. Mr. Norris, can I ask you, under the Supreme Court's decision and to the points you were just making, can we only inquire into the committee's legislative purposes on their face? Or can we inquire into the validity of that purpose? Or under the Supreme Court's test, can we only inquire into the validity of the evidence that Congress uses to establish its asserted purposes? I think the Court said that the committee needs to justify what it's doing with evidence. And part of that is that evidence needs to justify the quote significant step of involving the president. I think that's fairly searching review of what the committee is doing and fairly evidentiary and fact based. And the other part of that is the Supreme Court told the lower courts that it must insist on a subpoena that is no broader than reasonably necessary. I think all of that is fairly searching review. Is there in your view, can you give an example of a subpoena that would be reasonably necessary? Because one of the main takeaways I think from the Supreme Court's decision is that we have to balance these competing interests. I'm wondering in your view, what would it look like? You think this is not reasonably necessary. What would it look like for Congress to say that something was reasonably necessary? Can you give us an example of that? Well, I think the easier examples are the ones that caused the Supreme Court not accept the heightened needs standard. The court was concerned that the president's papers are not just purely personal sometimes, that sometimes they're infused with official decision making and reveal things that go to the function of executive agencies or official conduct. Where did the Supreme Court say that? I think if you look at section 2C, the bottom of that section of the opinion, the court. I'm sorry, finish your answer. I didn't read the opinion that way at all, but go ahead. I do think the court was thinking about personal papers that are infused with official actions. I'm sorry, Judge Rao. Would they still be personal papers once they're infused with official actions? That seems very confusing to me. I believe there's an example given in the opinion where President Reagan disclosed some of his diaries, sort of the most personal documents you can imagine. But they had some relevance to an investigation that involved Canada, I believe is the example in the Supreme Court's opinion. But you can see instances like that. But the Supreme Court also said in the next section that purely personal papers like the ones at issue here have a, quote, less evident connection, quote, to legislation. And so these types of cases, I think the court said, pose an impermissible or a heightened risk that the committee is pursuing something impermissible rather than focusing on true legislation. Can the committee ever seek the president's personal papers for any purpose? Do you think under the Supreme Court's test, is there any time when such papers would be permissible to seek? I think the Supreme Court's opinion, Justice Thomas addresses this directly, but the Supreme Court does not. I think all we know from the Supreme Court's opinion is that those occasions will be very rare. They will have to satisfy this multi-part test. And personal papers have a less evident connection to legislation and pose a heightened risk that something is amiss, that something like exposure or law enforcement or pure politics is involved. But I don't want to say never. I don't think the Supreme Court said never in its opinion. I think it said, here are the rigorous requirements we are going to require before that's allowed. So I want to ask you a question about the statement you make in your brief, Mr. Norris, because I want to be sure that we agree on what it is we have to decide here and what it is we don't have to decide. You say that the Supreme Court, and this is a quote, unanimously rejected the panel's view that the House rules and resolution authorizes subpoena. I'm curious about that because you argued that in your briefs before the court, and the court never mentioned this issue at all. And one would have thought that if the court had some doubt about whether the subpoena was properly authorized, it not only would have said so, but it wouldn't have had to even address the question of our proper standard, nor would it have needed to articulate the four factors. I just have three responses to that, Judge Taylor. So could you explain to me why you think, it was your argument that the authority, the adequacy of the House resolution is still before us? Is that your position? Yes, Your Honor. How is that? Could you explain that to me? Yes. So we think that statement you quoted, if that's in our brief, Judge Taylor, let me be a little imprecise. What we meant was the rationale that underlayed this court's House rules reasoning was rejected by the Supreme Court because the Supreme Court told us quite clearly that this subpoena does raise sensitive and weighty separation of powers and constitutional concerns. I agree. But the court's response to that was to articulate four factors that we have to apply. They didn't say anything about the adequacy of the House resolution. Right? There is no discussion of the House rules in the court's opinion. I do think it's an appreciative issue, however, because it vacated this court's decision in full. Vacated it with instructions to proceed in accordance with its opinion. Right? Right. And that's my question to you. I want to be sure we understand your position. The way I read the Supreme Court's opinion, it is a directive. Let's set aside the debate about the Maloney memo for a moment, okay? Even if you're right that we have to consider the Maloney memo, and even if you're right that it has to go back to the district court, I want to be sure that we understand each other. The way I read the opinion, the court has vacated the opinion of the district circuit, remanded for proceedings consistent with its opinion, which is the directive to apply the four factors in this case. Correct? I would dispute some of that, Judge Tatel. I think, of course, directed to apply the four factors. But I think in vacating this court's entire decision, it would have been fairly easy to drop a footnote in the opinion saying that we agree with the lower court's analysis of the other remaining arguments in this case. It would have been easy to affirm in part and vacate in part. But the Supreme Court didn't do that. It vacated the decision on one sufficient basis to decide the two consolidated cases in front of it. The separation of powers concerns in the four factor test was a sufficient reason to vacate. And so I believe a vacater wipes out the opinion of this court completely. And so all those questions are back before you now. We can't prevent you from continuing. If the Supreme Court had had doubts, if the Supreme Court had agreed with you in the argument you made before the court. I mean, the argument you made is that there's no need to address these weighty constitutional questions because the House resolution is inadequate to authorize a subpoena. And the court could have, if the court had agreed with you, it could have avoided these tricky And we know that we know from clear Supreme Court precedent that, you know, constitutional avoidance, that was easy. As you said in your brief, you can avoid all these difficult questions by declaring that the House resolution is inadequate. But the court didn't do that. Didn't even mention it. I just, I honestly don't see, I think the court would be stunned if we issued an opinion saying, oh, we've we've taken a look at this again. And now we realize that the House resolution is inadequate. I understand what you're saying, Judge Tatel. I think the court spoke when it vacated this court's entire opinion. It could have just as easily. I understand your argument. That's fine. Do you think the Supreme Court takes constitutional avoidance clearly? I do, Judge Millett. I also think this isn't. Do you think they consider it an essential predicate for reaching grave constitutional questions of the type they did here? I do, Judge Millett. I do think this is an odd case in that there were two consolidated cases with two sets of House rules that would have had to been investigated. Mr. Norris, can I ask you a related question? Even if we were to reconsider your clear statement principle, right, that the House did not clearly give this power to the committee, I mean, what about House Resolution 507? I mean, isn't that a clear statement? I mean, what more would we ask from the House? Like, if we were to say you need to make a clear statement, what could they do or what would you envision that they do other than something like House Resolution 507? I mean, haven't they in fact given us a clear statement here? So in terms of the what else, our position is the same. They would need to amend the House rules themselves to specify their authority to get the President's personal papers and then reissue a new subpoena under those rules. And so you would have a court tell the House what format it should use in terms of organizing the authority of its committees, that a court should say you have to do this by a rule and not by a resolution. I mean, isn't that judicial interference in the House's I think that principle flows from this court's avoidance cases in this area. Tobin, Ismael, and Rumley from the U.S. Supreme Court. So even if we accept Tobin and Rumley, though, why isn't House Resolution 507 enough? You think it's not enough because it's not a rule. It's a resolution, not a rule. I mean, is that a distinction that should matter from the judicial perspective? I think the distinction is that it is not an attempt to amend the House rules. The House rules, according to the case law, are essentially jurisdictional for the committees. That's their only source of authority. They cannot act outside of it. And so I do think there's a difference between a resolution declaring broad agreement with the outcomes of an investigation versus one that does the hard work of changing the House rules and reissuing the subpoena. And we actually agree with the majority opinion from the court in this case earlier that the resolution does not amend the House rules, does not purport to. And there's a separate argument which we've made, which is even if it did, there's an open question in this circuit about whether the timing was correct, whether they need to reissue the subpoena after the resolution, or whether you look at the committee's authority at the time the subpoena was issued and whether that can be retroactively amended. All those questions were litigated the first time around, and the court said we may well be right about the retroactivity point. The things we were not right about, according to this court, were whether this case presents sensitive constitutional questions and whether subpoenas for the president's papers do, in fact, implicate the House's authority vis-a-vis the executive branch. Those are the questions we think the Supreme Court should ask. Following up on our discussion about the House resolution, I'll just read you a sentence from one of our decisions where we faced exactly the same question, Brody v. Mather. Although the Supreme Court vacated our prior opinion, it expressed no opinion on the merits of these holdings, that is, the holdings that weren't before the court. They therefore continue to have precedential weight and in the absence of contrary authority, we do not disturb it. Why doesn't that apply precisely to the issues, the adequacy of the House resolution, constitutional avoidance, and all those other issues that you think we're now free to revisit? Yes, Judge, we don't dispute that principle. I would say that principle... Pardon me? We don't dispute that principle from this court's case law, the precedential weight. We don't. No, but precedential weight does not mean binding. It means that the vacated opinion continues to have persuasive force to the extent... No, no, no, not the opinion. He's talking about the holdings that were not decided by the Supreme Court, but that were decided by the panel. Correct, and vacater means that... Namely, the part of the House resolution. Correct, Judge, we don't disagree with that sentence. So the vacated issues not passed on by the Supreme Court continue to have persuasive force. The Supreme Court didn't speak to those issues directly, so this court is not forbidden from re-adopting those. Those holdings do not have actual precedential force. They have persuasive force. But the key part of that sentence is that an absent contrary reason to disturb them. We actually think that the Supreme Court's opinion has reasons to disturb all of the prior holdings of this court that it did not specifically address. The clear statement principle we just discussed, the court told us that even if this subpoena were issued by the entire House, it would still present weighty separation of powers concerns. In terms of law enforcement and exposure, the Supreme Court told us... You're certainly right about that. That's completely correct. I was just focusing on this simple question that you said that the House resolution is adequate to support this subpoena. I'm trying to find out why you think that is still an open issue for us, given the fact that the Supreme Court, even though you argued it and argued that it would be a basis for avoiding the constitutional questions, didn't say a word about it, and instead addressed the constitutional question, rejected your what it called demanding view, rejected the House's less demanding view, and articulated four factors that it remanded us to apply. Correct. It did all that. We did argue that the Supreme Court... I'm hesitant to put a lot of weight into silences of Supreme Court opinions. Sorry. You just broke up a bit. Could you just go back to the beginning? Not you. Go ahead. I'm sorry, Judge Cato. I said interpreting silences in Supreme Court opinions is always a dicey exercise, but... Sometimes dicey even to articulate non-silence, even to interpret non-silence. Exactly. But I do think that the Supreme Court didn't confront the constitutional question in this case is whether this subpoena will be enforced. The Supreme Court articulated a test for how to assess congressional subpoenas for the president's papers. It didn't apply that test itself. It gave guidance. It thought that guidance was sufficient to vacate the decisions of this court and the Second Circuit and remand, and that vacater, we believe, puts all the issues back on the table with the Supreme Court's guidance in mind. Mr. Rose, I have one other question. Do you think that in this context, the district court or even this court has the authority to narrow the committee's subpoena? Is there judicial authority, either in the district court or with us, to do that? Or would such a subpoena have to be voted on by the committee? We've argued that there are cases that narrow congressional subpoenas. I do think the Supreme Court's opinion in this case may have overtaken those prior authorities. The court has a line that says, I'm paraphrasing here, but I believe it's the court must insist on a subpoena that is no broader than reasonably necessary. And insist on a subpoena sounds to me like what we argued initially, which is a subpoena needs to be good and full. And if there are defects, the court can identify those specific defects and the committee can fix those specific defects itself. But I do think the committee needs to go back to the drawing board and do the work itself. So there's no possibility for narrowing the subpoena by the district court? All I can say, Judge Rao, is courts have done that in the past. In terms of whether they can do that, I think that's questionable in light of the Supreme Court's opinion. But of course, we would be happier with a narrower subpoena compared to the subpoena we have now. Well, it does seem to be that that's one of the reasons for remanding, right? This possibility that the district court might have some greater authority to narrow the subpoena. And I am wondering if that is even an authority that the district court has. I think that if it is an authority they have, it would be a benefit. I also think we've given other reasons why the district court is better suited here, especially to evaluate the effectiveness of accommodation and to weigh the facts in the record there. Judge Ramos in the Southern District of New York in the parallel Second Circuit case said that if this were a normal subpoena case, he would have forced the parties to narrow it down to the key disputes. I think there are supervisory fact-finding and even legal questions that the district court is well suited to address. Can I just follow up? You guys, you're complaining as for injunctive relief quashing the subpoena. So it's your position that that injunctive relief can't be granted in part by a district court? It has to be granted. It's all or nothing? Or do you think you can get a partial injunction? Judge, I think that's exactly the question that's sort of open in the case law right now. If your complaint was your complaint seeking either complete injunction or nothing, or is it your position that your complaint would allow a district court to grant your motion in part and deny it in part by narrowing the injunction? You quoted our complaint correctly. We sought to quash the subpoena in full. We also asked for all other appropriate relief. I'm going to try it one more time. And so my question to you is, and I hope I can get maybe a yes or no answer here, is that your position that the district court would have the authority on your complaint to grant your request for injunctive relief in part but not in whole? What is your position on that? Your position. I'm sorry, Judge, but I'm reading that as two questions. One, does it have the authority? And two, did we preserve that request in our complaint? Answer them both. That's fine. We asked for all other appropriate relief, which would encompass lesser injunctions. Your view is that the appropriate relief from the district court would encompass narrowing the injunction. I'm not talking about the Court of Appeal. I'm talking about the district court. Correct. Okay. That's what I was trying to figure out. Thank you. That's it. I don't have any more questions. Anything else? Judge Rao? No. Thank you. Judge Wyatt, no? No. Thank you, Mr. Morris. We'll give you a minute or two on rebuttal. We'll hear from the committee. May it please the Court. Can you hear me? Just making sure. May it please the Court. I'm Douglas Sletter, the General Counsel of the House of Representatives. Good morning, Your Honors. The Court asked a wide range of questions, and I have notes on all of them. So I was just going to jump right in and respond to a batch of the questions the Court asked. Before you do that, can I interject with a question? Of course. Can this litigation, this very litigation, possibly be concluded before January 3rd? Absolutely. Our review option for on-bank Supreme Court review? It definitely can, Your Honor, because you can issue a ruling enforcing the subpoena in full or in part. You can issue the mandate right away. Then President Trump will have a decision whether to seek further review at all, to seek review on-bank or cert. But presumably he would seek a stay, and if that stay is denied, then the material would be, I assume President Trump would comply, or Mazars would comply, and the material would then be released, whether that would make it move. There would be a strong argument that that would make it move. So yes. All of that, all of those circumstances existed in the Harriet Meyers case, yet the Court postponed it until the next Congress. Your Honor, I know Your Honor was on that panel, so I'm going to defer to Your Honor. Anybody can read the opinion. My memory, Your Honor, was that was closer to the January 20th date than we are now, and it was also in district court, district ruling. Here it seems to me all of these issues are teed up. This Court could rule very fast. The Court could issue a judgment. Let's go back to the Harriet Meyers case. The Harriet Meyers case, the timing was almost identical. I don't actually have the dates in front of me, but I think we were in October, and the Court made it very clear that it couldn't be resolved by the end of the term. In fact, in your brief, you distinguished the case by saying this case is different because in that case the committee conceded that it couldn't be completed by the end of the Congress. But that's not what it says. It says the committee acknowledged, acknowledged just the reality of the timing that it couldn't practically be done. I mean, look, let's assume we got an opinion out, something out in two or three weeks. It took a month in the most recent on-bank, the McGann case, and by the way, there again, Mr. Litter, we have the on-bank Court just did exactly the same thing in the McGann case. So you have two D.C. Circuit instances where under circumstances almost identical to this, we have decided it's best not to act until the new Congress is in place. It's hard for me to see how you avoid that in this case. Two questions, two points, Your Honor, and I apologize, Your Honor. Maybe you know an order that issued that I don't. This Court granted on-bank in McGann, and I'm sorry, were you saying the Court agreed not to decide? I apologize. I made a misunderstanding. The oral argument is scheduled for February, and we cited moderates. Oh, yes. Your Honor, remember that this case easily could be carried over into the next Congress. This is something that happens. This case now? Yes. That's why it's exactly like Myers. First of all, I'm not acknowledging apparently what was done in Myers. We believe that this Court can and should rule quickly, issue its mandate immediately, and enforce the subpoena. But if the Court doesn't, then this matter clearly, all that has to happen is on the initial day of the new Congress, January 3rd, it often happens that the Congress then renews ongoing litigation, and we have a batch of cases that are in that same exact situation, and we fully expect that that will be what will happen. But when you say renew litigation, does that mean they would reissue the subpoena? I just don't know how this technically works. Your Honor, my understanding is that in the past the House has not actually issued new subpoenas that the committee chair can just say we're continuing with the litigation of that subpoena. That's my understanding of one way that the House can do it. So the subpoena itself does not have any kind of expiration. Normally it would, Your Honor, but in this kind of circumstance, my understanding is the committee, the whole House, this would be done on the first day of the whole House, and the whole House would say we are continuing the litigation, and either the House could say we're continuing the subpoenas, or the committee chairs could do so. That would be up to the committee. That's one way, Your Honor. I just don't know the answer to this. Do we know committee chairs on January 3rd? The committee chair... If the majority changes... Of course we don't know. If the majority holds, and as you know, there have been many, many times over the history of the country where it holds with the same party, and then in that circumstance a very large percentage of the committee chairs remain the same, and so the committee chairs, my understanding is as a practical matter, will be doing things at the beginning of the new Congress before all the amendments in total to be set. The whole House can, yes, Your Honor. Your point, your answers to Judge Millett make this even closer to Myers. We said in Myers, and I'm quoting here, if the case does not become, despite the expiration of the subpoenas, there would be no pressing need for an immediate decision. That's what we said in Myers. And then we also went ahead and said it has the additional benefit of permitting the new president, well we don't know about that, presenting the new House an opportunity to press their views on this. It seems to me almost identical to the Myers case. Your Honor, I think there are some very significant differences here. And by the way, I've now been informed that the committee I'm sorry, Your Honor. Just say what those significant differences are. Yes, I need to correct something I said a moment ago. I'm told that new subpoenas would be issued, but could be identical. And what happens is the committee chairs are selected in December. So we would know on January 3rd who the committee chairs are. So the committee chairs, and remember, the committee chairs for either all the virtual health committees issue subpoenas under current House rules. So that would be known on the first day. Before the first day, we would know who the committee chairs are and the committee chairs then, consisting with what the full House does on opening day, the committee chairs would renew the identical subpoenas. The committee chairs also could, in light of an intervening Supreme Court decision, think about whether they want to. We don't know if that would happen automatically. They might think about whether they want to in light of Supreme Court decision, in light of intervening facts, whatever, want to reformulate the subpoena. Your Honor, that's no different from today. Your Honor, that's no different from today. If the committee chair wanted to change or withdraw or do anything with the subpoena, the committee chairs would be free to do that as right now. It might be, but if you have a change in membership, obviously if you have a change in party, if you have a change in membership, or if you are issuing a new subpoena, it's sort of a logical time to revisit issues. And so, sorry, I was going to say that. I was going to say that. As Your Honor mentioned, or I think all three of you mentioned before, this Court's prior opinion was vacated, but under circumstances that the precedent of this Court is that it remains binding precedent on a whole batch of issues. So this Court, unlike in Myers, this Court has already ruled on most of the legal arguments here. The Supreme Court then said, you erred, you didn't give enough weight to the separation of powers issues, because we should consider this a subpoena against the President, and therefore we need you, we need the courts to weigh under four factors that the Supreme Court said to be taken into account. That's very, very different from the situation in Myers, and indeed, for the reasons that have been said in our brief, we think most of the key issues in this case have already been decided and not touched by the Supreme Court. That's why it seems to me this Court could and should rule. This litigation has been going on for an extremely long time, and there's no good reason for the Court not to issue its decision, issue its mandate, and we'll see what happens. It may very well be... Are there any other differences? You said there were significant differences, plural. What are the others? I guess I think the difference in the status of the two cases seems to me very significant. Maybe when I said status, that's singular, but there are various parts of that status that make up a plural. So... My colleagues have more questions about that issue. I was going to change the subject. Judge Millett, did you? Judge Rondlein, yes. I had a different topic. Go ahead. You say in your... I want to pursue the same questions with you that the three of us were pursuing with Mr. Norris about the question of the Maloney memo and the related question of remand. Did I understand your brief correctly that you believe we can decide this case based on the Cummings record, correct? Yes. Without looking at the Maloney record? Yes. Correct? Yes. We believe that you can. Suppose I look at the Cummings record and because I think... This is just hypothetical. And because I think at least two of the four factors... I'll tell you what they are. Suppose I think that two of the four factors seem to me to be much tougher than what we applied. It seems to have an exhaustion requirement in it. And it also... We applied for relevance, a reasonable relevance standard. And that's different. That's obviously a lighter standard than reasonably necessary. Suppose I look at the subpoena and I think that based on the Cummings record, it doesn't survive. Do you want the court to go on then and then look at the Maloney record where you say the gaps are filled in? Or are you prepared to say you're What we said is this can be upheld on the basis of the Cummings material. But if you have concerns about that, you definitely should look at the Maloney memo. And we believe the case law shows that you can. So it seems to me that obviously it's not directly on point because we didn't have an exact situation like this one. But Senate Select Committee, this court in bank, looked at new material. It looked at what had happened outside Congress. It looked at what had happened inside Congress. And it applied the circumstances right then and there, whether the subpoena should be enforced. Let me give you a very specific example. And again, just hypothetical. If I were to apply the reasonably necessary test to this subpoena, I might wonder about the documents going, about the subpoena going all the way back to 2011, to 2013, whether those are, while we originally said they were reasonably relevant, they might not be reasonably necessary. Suppose I think that's the case. Is it your position then that we should enforce the subpoena without those two years? Or that we should go ahead and look at the Maloney memo, which will satisfy us if those two years are reasonably necessary? I'm going to answer that question yes, Your Honor. You should enforce the subpoena on the basis of Cummings for 2013 to 2018. And you should look at the Maloney memo that then will give you the full grounds on why it should go back to 2011. Although I don't think the Maloney memo actually changed the circumstances on that. I think if Your Honor pleases, I'd be happy to argue about why the Cummings memo shows that going back to 2011 was appropriate. But yes, you should, as I said, I answer you yes. Enforce part of it under Cummings, look at Maloney, and that I believe will give you all the grounds for enforcing as to 2011. Which gets me, if you don't mind, to the question that was asked before about could you enforce the subpoena in part? We think that obviously we think the whole subpoena should be enforced. But yes, you would enforce the subpoena in the way however you think is valid. Remember the Second Circuit in the Deutsche Bank case did that very thing. They thought that one small aspect of the subpoenas there should not be enforced. And so that's exactly what the Second Circuit did. And I believe this is... Your Honor, that's your position that institutionally the courts can rewrite subpoenas from the House of Representatives? You think that's within the judicial power? No, of course you can't rewrite subpoenas, Your Honor. What you can do, just like this court cannot rewrite statutes, but they make severability determinations. The Supreme Court has said they can do that all the time. And so what you would be doing is you would be enforcing part of the subpoena, part of it not. There's absolutely no... And by the way, this is obviously very normal practice in the regular world of subpoenas. Courts all the time enforce parts of it, but not others. But this is not a regular subpoena. It's a subpoena from a co-equal, I guess half-branch of government. No, Your Honor, it is from the entire House of Representatives, which for these purposes is the only part that counts. Obviously, this is a House subpoena. Right, but you're saying it's just like any other subpoena. Like any private subpoena, you're saying it's the same. I'm saying maybe it's materially different and that limits our authority to modify it. Your Honor, I'm sorry if I misspoke. I didn't say that it's like any other subpoena. I said that you do this all the time with other subpoenas, and I can't think of any reason why you would do this here. If, as you said, you were actually rewriting subpoenas, if you were saying, you know, you've made a very good case, and actually we're going to extend the subpoena to 2020. I don't think you could do that, but we're going to say, in fact, this should also cover Vice President Pence, so we're going to do that. Of course you can't do that. You can't rewrite subpoenas. But just like the Supreme Court and your court, you issue severability determinations all the time that occasionally may look to some people like you're doing some rewriting, but you made very clear you can't rewrite statutes, but you do that all the time in severability determinations. So I don't know any reason why that would be invalid here. And of course, the House continues... I think the question is, when we do severability, it's again, it's a matter of separation of powers. It's our duty to give effect to as much law as possible that was passed by Congress and signed by a president. So is it your view that that same duty to give effect to as much as possible applies to subpoenas? Absolutely, Your Honor. This is a situation where the House has said, the House, as Judge Robbins pointed out, a co-equal branch of government, has said we need material and it's valid for us to get it, which this court agreed with. And therefore, whatever, if the court finds that some part of this can't be enforced, I don't know any reason at all why you wouldn't go ahead and uphold what the House as a co-equal branch has done. I'm not sure of any theory that would say that you should not do that. I'm puzzled why that would... How much control do you want over your own subpoena, I think is the question. How much control does the House want over its own subpoena? Well, obviously it wants total control. We think the court should say, if the House thinks that the subpoena is valid, that's good enough for us. But of course, we're not going to do that, and the Supreme Court disagreed. But I don't know why, if how it could ever possibly be that this court would say, you asked for ten items, we believe you are under the law entitled to eight, but not the other two. And we would say, oh, no, if we can't get all ten, then the game is over. I'm hard pressed to think that there would ever be a situation where that would be appropriate. And if for some reason it were, the committee could say, no, it's all or nothing. And we would have probably said that in our brief, but as I say, I'm very hard pressed to think of a practical situation where that would ever arise. So obviously this court obligation is to uphold whatever Congress does that is proper. On the... I'm sorry, did I say your question? On considering the Maloney Memorandum, you referenced our decision in Senate Select Committee about sort of legislative developments there. Were those developments in factual dispute? I'm pulling out the opinion to try to see whether there were any disputes about it. I think this happened on Congress. I didn't know that there was any factual dispute. Right. There's no factual dispute here either, Your Honor. There's no factual dispute. You can ask my friend... He gave me a list of things that he does dispute about in the Maloney Memo. Right. There's no dispute about material facts, just like, by the way, the original... In the district court, my memory is that President Trump agreed there were no material facts in dispute. Sure, but there was no Maloney Memo. The question is, can we consider the Maloney... We had a summary judgment record, a decision on a summary judgment record, and now we have this Maloney Memo. It's legislative like the Senate committee. It's judicial notice. We're given different theories for it, but it seems to me on a summary judgment record, the other side is arguing that they, at a minimum, would challenge some of the facts in that memo that at least to them they think are material. It might be up to a court to decide whether they're material disputes. And so I'm trying to... They said about the accommodation history, about what has been produced, which I think could bear some relevance. They argue it would bear relevance to the Supreme Court, prongs of the Supreme Court task that was enunciated in this case. And so what do we... That makes it not like judicial notice, and it makes it not like the Senate select committee. So what is our authority for crediting everything in the Maloney Memorandum at this level in this court without the other side having a chance to offer its factual version of events? Certainly, Your Honor. And there's several questions packed in there, so I'm going to address each of them. Your Honor, you're right. This court decides what is a dispute about material facts. And our position to you is there are no disputes about material facts because this court and the Supreme Court have made clear that what you look at are what Congress, what the House says it is looking at, what it is looking into and why. And what we did... We brought this court last time on that, and what the Maloney memo does is it provides Chairwoman Maloney's statements, just like Chairwoman Cummings did, Chairwoman Maloney's statements of what this subpoena is about and why it is being pursued. This court, as it has done many times and as the Supreme Court has done, this court must accept that. So there's no dispute. I assume Mr. Norris is not saying that what we submitted with our brief was actually a fake, that Chairwoman Maloney's statements... Well, let's be clear here. That's not the argument. This is not the Maloney Chairwoman Maloney memorandum. But that's not the point. The point is that there's more in that memorandum than here's our purposes. Sorry, I can just finish here. There's lots of recitation of what happened, what interactions there were, what requests for information, what responses to information they got, which might seem relevant to some people to the Supreme Court's test. That can be debated and argued, but... Right. And I was getting to that next. No, there is nothing... You can disagree about whether the committee received one document or two documents that are both irrelevant. We got some token tiny number of documents. So as far as what happened in accommodations, that's not material to this dispute. The Supreme Court notice never says anything about what this court should do on remand is look to see whether there have been sufficient accommodations. That's not noted anywhere. Would that not be arguably an element of reasonable necessity? It certainly could be, Your Honor. But again, the material fact is what Mr. Norris admitted to you earlier. They have given us nothing. When I say nothing, again, they gave us some documents that are not on point, that are public information already. As far as what is in dispute here... Who is the they that you reference when you say that? I'm sorry? Who is the they who has not given you anything? Neither President Trump nor GSA nor Mazars. Well, he says you didn't ask the Trump organization. We did. We did ask for materials. The main thing is since this case has started... From the Trump organization? Sorry, from the Trump organization? Yes. Yes. And again, if I may, because this has come up in every one of the subpoena cases. And please bear with me for just a moment. This case, Deutsche Bank, Census, tax returns, McGann, every time the Justice Department and or President Trump have said accommodations. Each time we point out the same thing. President Trump has never been willing to produce any documents. And remember, he has said that. He said we're not going to comply with subpoenas. So please ask Mr. Norris. I think you did this already. But it's the same thing I've said in every single court where I've argued these cases. Ask counsel for the Justice Department or ask counsel for Mr. Trump. What are you talking about? Is Mr. Norris saying, OK, we'll give you the 2014 financial statements? No. They're not giving us is a complete red herring. Please do not be fooled by this. This comes up every single case we ask. We get nothing. So that's not there's no dispute about whether as a legal matter, we need to do more accommodations. They are not producing anything. And again, you heard that from Mr. Norris. So that's not a material dispute. Material dispute is would be if he said Chairman Maloney didn't say this. If Chairman Maloney did say it, that's what is appropriate for this court and the Supreme Court's precedence. And that makes it just like Senate Select Committee. Mr. Letter in the Supreme Court's opinion, they expressed some serious concern that the committee could not identify any information about the president that could be related to potential legislation. So if we were to uphold the subpoena on, say, the Cummings memorandum, I mean, what would be the limits to what type of information the committee could seek? I mean, could they say they're interested in this president's health information because of his age or because he recently contracted the Corona virus? I mean, you know, what would be the what would be the limit? Can you can you identify one? You are. That would depend on a different factual scenario. So if I may and I don't this obviously is not simply hypothetical. Suppose the president was going in for major surgery. That would mean that he would be under a let's say it would be a situation where he would be put in a coma for a certain amount of time. As we know, there are plenty of major surgeries that do that. So the president was going to be in a coma for, let's say, at least a week or two weeks. If that were the circumstance, it would clearly under some situations be valid for Congress to inquire, whether by subpoena or otherwise, what is the health of the president? Is the president actually aware? That's not this case at all. But what would be the legislative purpose? So, I mean, I think one thing about the Supreme Court's test that's a bit tricky is that you have to identify why the president's like a particular president's information is reasonably necessary to your legislative purpose. But the more you focus on the particular aspects of the president, right, whether it's his health or, you know, the briefs and the memos repeatedly say this is the president's actions with respect to his financial disclosures, doesn't that then move into the category of cases that the Supreme Court says are inappropriate, right, looking for potential law enforcement or exposure for the sake of exposure, right? The more you focus on a particular president's, you know, concerns about a particular president, you know, don't you start to move into that area, into the areas that the Supreme Court has said are inappropriate? Your Honor, that question gets right to the heart of this remand, and so I'm very happy to address that. I think that's extremely key, and I suspect it's on the minds of all three of you. Yes, and what, remember, one of the main things we're looking at here are presidential conflicts of interest because of financial things, and Chairman Cummings made that clear, and Chairman Maloney explained that at great length. Congress has, under the Constitution, Congress has power over foreign trade. Congress is asking, this committee is asking, what conflicts of interest do you have? Do you have, have you had, let's say in 2012, did you sign a letter of intent to build a hotel in Istanbul? Did you enter into a contract in 2014 with Russian oligarchs? If the answers to that, and we have no way of getting that information anywhere else, we don't know of any other way to get that. Let me step aside for just a second. As we know, there's been reporting, for instance, in the New York Times, President Trump has said, the Times, Mr. Cohen is a liar, and the Times is wrong, okay, so we're dealing with that. So, Your Honor, Congress could say, the President made a policy decision about what to do vis-a-vis trade with Turkey, or trade foreign dealings with Russia or China. The Oversight Committee absolutely has authority to find out, should we look into legislation to override those policy decisions, because they were made as a result of personal financial interests of the President, and therefore we believe those policies should be overridden by legislation. That is absolutely clearly within the power of Congress. So, we need to know, the biggest thing here maybe, is we need to know what kinds of financial arrangements that, as we know, this President has extremely complex and opaque financial dealings. We also know that in his financial disclosure statements, there have been very, very serious errors. So, we need to know exactly for legislative purposes. Mr. Lutter, those arguments, I mean, I don't believe those arguments are ones that you made in your brief. I mean, you focused on financial emoluments and GSA, but now you're saying that the President's, you know, the alleged financial improprieties are leading to any number of other policy decisions that may need to be overridden. Your Honor, we absolutely made this argument in our brief. I'm hoping that my colleague here can pull up page numbers for you, but we absolutely made that argument, and it is discussed at considerable length in Chairwoman Maloney's statements, I believe. Let me just check. I think it's at page 31. It begins, I believe, at 31, and it goes on for several pages. So, this rationale is definitely covered in our briefs and is in Chairwoman Maloney's statements. I'm told it's, oh, at page 24 of the Maloney memo is one of the places, and as I say, if you want, we can find exactly where we argued this in our briefs. This is a key, an absolutely key part of our case. So, then other points. GSA, the suspicion is raised by the press, and again, the President says they're wrong, is that the GSA may not have been given the appropriate information, for instance, about how much profit is being made or Mr. Trump's, remember, the lease had certain provisions about Mr. Trump's personal financial situation that's in the lease. And has he sought that information from GSA directly? We tried, and we were told we get nothing. So, again, this is a committee that is being extremely responsible. It has very good reasons why it is seeking this information, and nobody can possibly argue that the committee can't pass legislation governing GSA. It could provide the GSA Inspector General, who has expressed concerns about this very deal. The Inspector General shall be given more money, more inspectors, more power. We can do that. We could pass legislation saying that there can be no contracts like this. You could pass such legislation without knowing the details of any particular problems that you might be suspicious of. And again, that's the very nub of this case, Your Honor. That is the claim. As this Court and the Supreme Court have said, when Congress doesn't have full information, it's like shooting in the dark. Let me just say, this Court could issue opinions based on less than all of the facts. If you were required by law to do it, you could do it. But that would not be ideal. Here, it is reasonably necessary for us to have the full information. And I'll say it one more time. Remember that we've obtained considerable information. President Trump has said that that information is wrong. It's inaccurate. It's lies. So surely nobody thinks that Congress should ignore the President. Pass legislation that affects the Presidents and the Presidency based on information that the President says is wrong and lies. That can't possibly be what the Supreme Court or this Court thinks is appropriate. So yes, we have some information. Is it correct? Some of it. But the President says it's wrong. So we need to find out what exactly is the situation with GSA? What exactly is the President's relationship with foreign countries, foreign companies, etc.? What are the conflicts of interest? When he decided to do something or other with a trade agreement, was that influenced heavily by the fact that he has personal financial duties? That's why we have disclosure. And by the way, I'm sorry, my colleague has just given me on this question you asked. This is in our brief. It's at page 22 of our supplemental brief. It's covered at pages 2, 8, 19, and 38 of our supplemental requirements. So the reasons that you were just giving that you need to figure out precisely what happened, why are those not more like law enforcement or exposure related reasonings, which the Supreme Court has said are inappropriate? Getting at the nitty gritty. Legislating means enacting prospective rules for the future, not figuring out necessarily reconstructing the specific facts of what's happened in the past. So how do we think about that line, which the Supreme Court says exists and that we have to be concerned with? Yes, Your Honor. And remember, that argument, you recognize that. The prior panel opinion recognizes this as a line to be concerned with, and you rejected the argument that President Trump was making. Let me give you one most obvious example that comes to my mind. Congress did a massive investigation of 9-11. Obviously, a significant part of that was about law enforcement. Meaning, what happened? Why did law enforcement not catch these people in advance, etc.? What did they actually do? And what statutes should be passed in the wake of that? And there was all sorts of legislation. Very often, you need to know what happened in order to know what to pass in the future. And in this situation, as I said, it's not at all hypothetical. We know that President Trump, again, he has said these are wrong, but he at least has had certain financial dealings with foreign governments and foreign companies. The President also has had dealings with foreign policy and foreign trade, dealings with these countries. We need to know what happened because we need to know whether to pass legislation to override determinations that he made. Clearly, it's a mix. Obviously, as you point out, we'll be legislating for the future, but that can't include overriding something that was done before. With GSA, we got into this terrible situation now where we have the President is both the landlord and the lessee. So we need to find out, is that what happened and why? And why did GSA allow that to happen? And so that we can decide, should we pass legislation? And exactly what should that legislation say so that this doesn't happen again? Or if there is a second term so that it gets ended? We can't have a situation where, or at least we need to know, do we have a situation where the President or, say, the Secretary of State is both the contractor and the contractee? Surely that is an appropriate subject for Congress to investigate. And let me say one more time, this President's information is essential for that. Why is this different? Because other Presidents, we got this kind of information in the Clinton administration where he provided tax returns, all sorts of financial information. But on two occasions it came out he was getting gifts toward the end of his administration and there were donations to a library, Presidential Library. Congress asked about those. President Clinton, as all of his modern President's did, he provided the information. Jimmy Carter provided the information, etc. Other Presidents have provided the information. The only reason we're here, as the Supreme Court recounts in the beginning of its opinion, the only reason we're here is because this President has refused to cooperate at all, unlike all of the modern prior Presidents. That's why we're here. Absolutely. Again, suppose we have a trade deal that the President decided to end or didn't end. Yes, we can pass legislation to override it. Suppose, as I said, GSA, we can pass legislation to say the Inspector General for GSA shall henceforth every three months demand from any GSA contractor, which would therefore now include the President, certain information. Or GSA shall make sure that under no, any time a government lessee attains public office, the contract shall end. We can provide that by legislation. These are all things that Congress needs to know as part of its oversight function in order to, which definitely can lead to legislation. The last thing is the monuments. I know this court already ruled that. The Supreme Court didn't touch it, so we think it's there already, but let me just point out the Constitution says that Congress can approve monuments. Well, foreign, not domestic. Maybe Congress wants to pass a statute that defines a monument. We know that this is something Congress is interested in. We know its purpose because we've already done it, but based on incomplete information. The House passed the bill already, but it would be much better to pass a bill with full information. What exactly is the President getting from foreigners? What's he getting from foreign governments will help us decide how to define a monument, which the Constitution seems to provide to Congress. Any other questions? Okay. I'm sorry. Was that a yes or no? No. Okay. Thank you, Mr. Letter. Mr. North, you were out of time, but you can have two minutes. Thank you, Judge Tatel. Just really one point in rebuttal. Under the Cummings record, the committee cannot satisfy the Supreme Court's four-part test. The Cummings memo that was attached to the subpoena has no specificity about the committee's legislative goals. Many of those goals and the ones that my friend just recounted do not even satisfy this court's litmus test that it specified in its prior opinion under a more lenient standard. They are not laws directed at the president. The committee must pursue those types of laws. It does not justify the significant step of involving the president. Those are basic policy judgments that cases like Senate selects say you do not need to get what the committee calls a detailed understanding of the president's financials. Would you agree that if Congress is going to pass legislation that regulates the president, and I don't mean the individual president, I just mean the position of the president or the office of the presidency, that Congress needs to step carefully and draw lines carefully so it needs to walk a fine line there that it may not need to when regulating other folks in the executive branch? Would you agree with that? I assume your client would insist constitutionally they have to be as careful as possible. Don't you need precise facts of what exactly the problem is to ensure you toe that line or walk that line? I do not believe to determine whether you should require precise values instead of ranges or how far back the disclosure laws should go or what kinds of information they should disclose. I do not believe you need what the committee calls a detailed understanding of the extent and complexity of the president's finances. I believe that is still overstepping. They can't shoot in the dark. They can't make assumptions based on the facts of the president's finances. I do not believe that other executive branch officials, I assume you would say, that they really need to understand the nature of this precise problem and target that with the legislation because overshooting could have its own constitutional consequences. We do not want them to overshoot, but we do think that it is important to understand the nature of the problem. Yes, Your Honor. It is clear to me that the committee already believes it understands the nature of the problem. It describes the problem as glaring and obvious are words that it uses in that memo. It has already pinpointed the precise legislative solution. I think there is some problem there. There is plenty of smoke, but we really consider it incumbent upon us to understand the source of the fire. Your Honor, I think this directly answers your question. I think this is important why there should be a subpoena directed to us for the Mazars documents, which has never been issued or even suggested or even been an informal document request to us for this. It is because in the accommodation process, there are plenty of ways for us to work together and discuss how to frame legislation and why we made certain decisions. They do not need to ask your opinion on legislation. That is not what the Supreme Court said. I am curious about your insistence that they needed to work more with the Trump Organization. Just so we do not blink reality here, the President really has not been very accommodating of a subpoena request in the White House or in other agencies. In fact, it is flatly forbidden any compliance whatsoever in some situations. Are you telling me that the issue here is that what the President wanted was just to ask the Trump Organization and then everything would change? That there would be a different accommodation in the form of maybe not complete, that is what an accommodation is, but relevant disclosures that the Trump Organization would do what President Trump and the White House and agencies at his direction have not done in the accommodation process? Two answers. First, we do have a dispute about how accommodation has gone so far. When my friend says that we provided nothing in response to his request, he means we provided a briefing, we provided 15,000 pages of documents that he subpoenaed the Secret Service and DOD who complied fully. He subpoenaed, or not subpoenaed, but he asked for documents. He asked for information about the Trump Hotel and he got fire alarm testing, which really was not the question at issue. They do not say in the Maloney memo that nothing has come forward. It is just what they most need to legislate in a very careful way that you said is constitutionally required here. What I am asking you is a different question. I understand I have written down that that is one of your factual disagreements with the Maloney memorandum. What I am asking you is a different question. Is there any basis in this record or any representation you would make as an officer of the court to suggest that the substantive accommodation in the forms of sharing requested information would be any different from the Trump organization than it has been from President Trump, from the White House, and from federal agencies? We believe a direct request to us could very well work out differently. I don't want could. Could is just a hypothetical. I don't have authority. I will say that there are obvious narrower alternatives, including asking us for in-camera review of the relevant documents or asking us for just to answer particular questions like what should the range be or what would the range be? Why did you answer a question this way? Why did you believe that this is the way you have a right to verify things on its own, actually verify information given to it before it uses it as a basis for legislation? Yes. Okay. But our position is that the president of the United States is the last place they should turn, not the first. Okay. Unless my colleagues have any. I've got a hand up. Go ahead. All right. Mr. Letter, if you're going to say anything, I'm going to give Mr. Norris a chance to respond. That's absolutely fine. Judge Rowe asked a factual question of Mr. Norris that I have the answer to, and I apologize I didn't get to it. May I just answer Judge Rowe's factual question, Your Honor? Yes. Judge Rowe, you had asked about resolutions and their relationship to House rules. The way the House amends its rules during the session is by resolutions. So, for instance, in the case involving the remote voting by proxy that is before this Gordon McCarthy case, the House passed a resolution that changed the rules for the remainder of the time of the Congress. So I didn't want there to be any confusion. A resolution is the way that the House changes its rules. Mr. Norris, would you like an extra minute or two? We don't have anything further, Judge Cato. We just ask that this report be either reversed or vacated and refactored. Okay. Thank you. Mr. Norris, Mr. Letter, thank you to both the cases submitted.
judges: Tatel, Millett, Rao